**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Deer River Development, Inc.,
Craig Wilson, and Lisa Wilson,

Plaintiffs,

v.

Civ. No. 02-282 (RHK/RLE)
**MEMORANDUM OPINION AND ORDER**

Cincinnati Insurance Companies,

Defendant.

---

Mark L. Knutson and Lisa Wilson, Agnew, Dryer, Storaasli, Knutson & Pommerville, Ltd., Duluth, Minnesota, for Plaintiffs.

Douglas R. Archibald and Tamar N. Gronvall, Terhaar, Archibald, Pfefferle & Griebel, LLP, Minneapolis, Minnesota, for Defendant.

---

## Introduction

This insurance coverage dispute arises out of Defendant Cincinnati Insurance Companies' ("Cincinnati Insurance") denial of coverage for water damage that occurred in May 2001 to rental property located in Deer River, Minnesota. Plaintiffs Craig and Lisa Wilson are the named insureds on a homeowners policy issued by Cincinnati Insurance. Craig Wilson is also a 50% shareholder in Plaintiff Deer River Development, Inc. ("DRD"), which purchased the property in question in November 2000 for $190,000. After DRD acquired the property, Craig Wilson contacted his agent and obtained an amendment to the couple's homeowners policy that provided $85,000 in coverage for the Deer River property. Craig Wilson did not inform the insurance agent that DRD owned

FILED JAN 09 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD______
DEPUTY CLERK______

the property. Cincinnati Insurance received premium payments from Craig Wilson both prior to and after the property sustained water damage.

Presently before the Court are the parties' cross-motions for partial summary judgment as to two of the Plaintiffs in the case.[1] Cincinnati Insurance moves for an order (a) dismissing DRD from the action because it has no contractual relationship with the insurance company and (b) dismissing Lisa Wilson because she has no insurable interest in the Deer River property. For their part, the Plaintiffs seek an order declaring that, as a matter of law, DRD has a contractual relationship with Cincinnati Insurance and Lisa Wilson has an insurable interest in the property. For the reasons set forth below, the Court will grant Cincinnati Insurance's motion as to Plaintiff DRD, and will deny the Plaintiffs' motion in its entirety.

## Background

Craig and Lisa Wilson have a homeowners insurance policy with Cincinnati Insurance for the policy period of March 31, 2000, to March 31, 2003. As originally issued, the policy insured the Wilsons' residence in Duluth and certain personal property. (Gronvall Aff. Ex. A (Homeowners' Insurance Policy).) John Bell is the insurance agent who sold the Wilsons their homeowners policy.[2] (Knutson Aff. Ex. A (Craig Wilson Dep.) at 29-30.) Prior to obtaining the homeowners policy through Bell, Craig Wilson

---

[1] Neither party is moving for summary judgment as to Plaintiff Craig Wilson.

[2] Effective July 1, 2000, the Wilsons added a $1,000,000 personal liability umbrella to their homeowners policy. (Id.)

had contacted Bell and obtained insurance from Cincinnati Insurance for Wilson's business, Environmental Troubleshooting, Inc., in July of 1999. (Id.)

On August 10, 2000, Craig Wilson and Joe Gareri incorporated DRD as a domestic corporation under the laws of the State of Minnesota. The purpose of the corporation was to purchase a piece of property in Deer River, Minnesota, for rental. (Gronvall Aff. Ex. D (Dep. of Joseph Gareri) at 7.) Craig Wilson and Gareri are each 50% shareholders in the corporation. (Knutson Aff. Ex. A (Dep. of Craig Wilson) at 16.) At all times, Gareri has been the president of DRD. (Id.) Lisa Wilson, an attorney and Craig Wilson's wife, owns no shares in DRD and has never been an officer of or otherwise involved in the corporation. (Id.)

On November 3, 2000, Duane and Mary Hill, husband and wife, conveyed the property at issue, located at Route 1, Box 26, Deer River, Minnesota, to "Deer River Development, Inc., a corporation under the laws of Minnesota."[3] (Gronvall Aff. Ex. B (Warranty Deed).) DRD paid approximately $190,000 for the Deer River property. (Gronvall Aff. Ex. D at 10; Knutson Aff. Ex. A. at 25.) At all times, DRD has owned the property in question; neither Gareri nor Craig Wilson has owned it in his individual capacity. (Gronvall Aff. Ex. D at 77.) The property in Deer River is the only piece of property that DRD owns. (Knutson Aff. Ex. A at 23.) After DRD bought the property,

---

[3] Gareri testified that he had been the one who first found the property, given that he worked in that area. (Gronvall Aff. Ex. D at 10.)

Craig Wilson and Gareri discussed what to do with it and decided to rent out the house because it was nice, there seemed to be something of a housing shortage in the Deer River area, and people had approached Gareri about renting the home. (Knutson Aff. Ex. A at 31-32.)

Effective December 21, 2000, Cincinnati Insurance amended the Wilsons' homeowners policy to add coverage for a "rental dwelling located at Rt. 1, Box 26, Deer River, Minnesota 56636." (Gronvall Aff. Ex. A.) Gareri never had any conversations with Craig Wilson about how best to insure the Deer River property. (Gronvall Aff. Ex. D at 77.) Wilson testified that he contacted his insurance agent, John Bell,

> . . . and explained that we had just bought a piece of property. *I stated I was part owner and Joe Gareri was part owner*. I said I wanted to insure this property because there was a house on the property and I was afraid something might happen to it. And he set up the insurance paperwork.

(Knutson Aff. Ex. A at 26-27 (emphasis added); see also id. at 27 ("I said we were 50/50 partners, and I wanted to get it on our policy so in case something happened, it would be covered.").) Wilson avers that he also told Bell that he and Gareri would be renting the house to others. (Wilson Aff. ¶ 4.)

Cincinnati Insurance insured the Deer River property for $85,000. (Id.) Craig Wilson testified that he

> threw out a value, and I don't remember what that value was, and [Bell] told me – he says, "Craig," he says, "based on the specs and the dimensions of the house that you gave me, I would recommend that you insure this for $85,000." Based on his knowledge of the market and what a house is worth, he said that's what he would recommend doing. And I said, "That's

> fine. Then insure it for that, if that's what you believe is the correct amount."

(Id. at 28.) Bell also asked Wilson about whether there was a wood burning stove; Wilson said that there was but "we would not use it. I said if that stove would be used, I would let him know." (Id. at 34.) Adding coverage for the Deer River property to the Wilsons' homeowners policy increased their annual premium by approximately $340.00, for a total annual premium of $1,173.00. (Gronvall Aff. Ex. A.)

At some point after Wilson spoke to Bell about insuring the Deer River property, Wilson called Bell again to advise him that there now was a tenant at the house who was asking about using the wood burning stove. (Knutson Aff. Ex. A at 34.) "I could not guarantee that wood burning stove would not be used and I recommended to Mr. Bell, my insurance agent, to add that to the policy so there would be additional coverage, in fact, if he used the stove. Because we were not there, obviously, 24 hours a day." (Id.)

On May 3, 2001, Gareri called Wilson and informed him that the tenant had moved out and there was water and garbage in the basement of the house.[4] (Knutson Aff. Ex. A at 14, 48-50.) Wilson notified Bell of the problem at the Deer River property; Bell concurred with Gareri's plan to install a sump pump in the basement immediately, and said that an adjustor would be out within two or three days. (Id. at 42-43.) Several days

---

[4] Wilson later learned that the tenant had also stolen some items from the house and had vandalized others. The floor of the basement was covered in dog feces, and the tenant had evidently dumped several bags of household garbage (including food scraps) into the basement. (Knutson Aff. Ex. A at 78.)

after learning about the water damage, Craig Wilson called Bell again because an adjustor had not yet been to the Deer River property. (Id. at 66.) Wilson visited the property on May 18, 2001, two weeks after Gareri's call, and saw black mold on the sheet rock walls and on some of the wood in the basement. (Id. at 56-57.)

At some point after Wilson learned of the water damage at the Deer River property, he told Bell, for the first time, that DRD owned the rental property. (Craig Wilson Aff. ¶ 5.) Since reporting that fact to Bell, Craig Wilson has continued to pay the full amount of his homeowners insurance premium, including the portion that reflects the coverage purchased for the Deer River property. (Id. ¶ 6.) As of his deposition on September 24, 2002, Craig Wilson had never submitted to DRD for reimbursement the premiums paid over the previous twenty-one months for the $85,000 in coverage for the Deer River property; Wilson expects that, at some point, DRD will reimburse him for that cost. (Knutson Aff. Ex. A at 27.) Craig Wilson has not sought to remove the $85,000 coverage for the Deer River property from his family's homeowners insurance, and Cincinnati Insurance has continued to accept the Wilsons' premium payments on their homeowners insurance in their entirety.

## Analysis

### I. Standard of Decision

Summary judgment is proper if, viewing the record in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is

entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that the material facts in the case are undisputed. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). The court must view the evidence, and the inferences which may be reasonably drawn from it, in the light most favorable to the nonmoving party. See Graves v. Arkansas Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997).

The nonmoving party may not rest on mere allegations or denials, but rather must demonstrate the existence of specific facts that create a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995). The nonmovant cannot avoid the entry of summary judgment in favor of the movant merely by pointing to some alleged factual dispute between the parties. Instead, any fact alleged to be in dispute must be "outcome determinative under prevailing law," that is, it must be material to an essential element of the specific theory of recovery at issue. See Dancy v. Hyster Co., 127 F.3d 649, 652 (8th Cir. 1997); Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992).

**II. Dismissal of DRD**

DRD argues that, as a matter of law, it has coverage under the Wilsons' homeowners insurance policy based on a smorgasbord of equitable theories including waiver, estoppel, unjust enrichment, and laches. DRD also argues that it has coverage

because the Wilsons assigned the policy to it. Finally, DRD contends that the Wilsons' homeowners policy should be reformed to conform to the reasonable expectations of the insured and provide coverage to Deer River. For its part, Cincinnati Insurance argues that an insurance policy is contractual in nature and personal to those named as insureds in the policy. Cincinnati Insurance has never issued a policy to DRD or named DRD as an insured on the Wilsons' homeowners policy. It contends that it, therefore, has no contractual obligations to the corporation. The Court begins with the Plaintiffs' arguments in favor of coverage for DRD.

### A. Equitable arguments of waiver, estoppel, laches and unjust enrichment

#### 1. Waiver

Plaintiffs argue that Cincinnati Insurance has waived any objection to providing coverage to DRD under the Wilsons' homeowners policy because "[a]n insurer waives any breach of conditions resulting from facts known to it, directly or through its agent, at the time it issued the policy and accepted the premium." (Pls.' Mem. in Response to Def.'s Mot. for Summ. J. at 7-8.) The undisputed facts establish, however, that Craig Wilson had not correctly informed Bell of material facts regarding the Deer River property at the time Cincinnati Insurance amended the Wilsons' homeowners policy.

Contrary to Plaintiffs' assertions, Craig Wilson never told Bell that he and Gareri *were the only shareholders* of the corporation that had purchased the Deer River property. (See Pls.' Mem. in Response to Def.'s Mot. for Summ. J. at 8.) Rather, Wilson mis-

informed Bell that he and Gareri had purchased the Deer River property *individually, as 50/50 partners.*[5] Nor is there any evidence that Wilson informed Bell of the market value of the Deer River property – i.e., what DRD paid for it one month earlier. Wilson obtained only $85,000 in insurance coverage relating to the Deer River property, an amount that represents less than half the price DRD paid for it.

Cincinnati Insurance acknowledges that Wilson, as a 50% shareholder of DRD, has *some* insurable interest in the Deer River property, which is apparently the sole asset of the corporation. The fact that Cincinnati Insurance received premiums for insuring *something* does not constitute a waiver of its argument that it has no contract of insurance with DRD. Plaintiffs have failed to establish that Cincinnati Insurance has waived its ability to deny coverage vis-a-vis DRD.

**2. Estoppel**

DRD alternatively argues that Cincinnati Insurance must be equitably estopped from denying coverage to the corporation on the grounds that Craig Wilson reasonably relied on Bell to insure the property, and that Bell knew "the actual situation of the property to be insured." Under Minnesota law, "[a] party seeking to invoke the doctrine of equitable estoppel has the burden of proving three elements: (1) that promises or

---

[5] Lest one think that the ownership of the Deer River property is a "technicality," consider what would happen if a tenant of the property were burned in a fire and sued Wilson and Gareri in their individual capacities as the "owners" of the house. There can be no doubt that Wilson would argue that the corporation – not he, individually – owned the house and had leased it to the tenant, thus shielding his personal assets from liability.

inducements were made; (2) that it reasonably relied upon the promises; and, (3) that it will be harmed if estoppel is not applied." Hydra-Mac, Inc. v. Onan Corp., 450 N.W.2d 913, 919 (Minn. 1990).

The Plaintiffs have not established reasonable reliance on Bell's statements and actions, which is an essential element of the doctrine of equitable estoppel. As set forth above, it is undisputed that Wilson mis-informed Bell as to the ownership of the property to be insured. Nor did Wilson tell Bell that he was seeking insurance for the Deer River property in his capacity as an officer, director, or shareholder of DRD, despite the fact that Wilson had in the past dealt with Bell to obtain insurance for Wilson's own corporation, Environmental Troubleshooting, Inc. Nor is there any evidence that Wilson provided Bell with accurate information regarding the property's fair market value. These facts were material. Having failed accurately to apprise Bell of the status of the Deer River property, it cannot be said that Wilson's reliance was reasonable. Bell did not know the actual situation of the property to be insured and equitable estoppel does not operate here to create coverage for DRD.

### 3. Laches

DRD alternatively argues that Cincinnati Insurance must not be allowed to deny the existence of an insurance policy running in favor of DRD based on the equitable doctrine of laches. Under Minnesota law, laches operates to prevent one who has not been diligent in asserting a known right from recovering at the expense of one who has

been prejudiced by the delay. Aronovitch v. Levy, 56 N.W.2d 570, 574 (Minn. 1953). The Plaintiffs invoke laches here on the grounds that the insurance company has unreasonably delayed in asserting that DRD does not have a policy with it.

The heart of Plaintiffs' laches argument appears to be that, despite knowing that Craig Wilson alone did not own the Deer River property, neither Bell nor Cincinnati Insurance made any further inquiry into the true state of affairs. Craig Wilson complains that Bell "did not ask about the legal structure of our business" and "never asked for any documents concerning the purchase of the property nor information regarding the details of the lease." (Craig Wilson Aff. ¶ 4.) Plaintiffs cite no authority for the proposition that an insurance company must investigate before issuing insurance. Indeed, the policy itself clearly states that it is the *insureds'* obligation to provide accurate information to the insurance company:

> The entire policy shall be void if whether before or after a loss any insured has
> (a) intentionally concealed or misrepresented any material fact or circumstance; or
> (b) made false statements or engaged in fraudulent conduct, relating to this insurance.

(Gronvall Aff. Ex. A at 17 of 18.) Craig Wilson incorrectly told Bell that *he and Gareri* had bought the Deer River property as 50/50 partners and were part owners in their individual capacities. Wilson misstated that fact despite having formed a corporation with Gareri four months earlier for the express purpose of owning property in the Deer

River area.[6]

Plaintiffs' efforts to blame Cincinnati Insurance and Bell for the confusion over who owned the Deer River property are unpersuasive. As the Minnesota Supreme Court long ago observed, a party "cannot invoke equitable relief and at the same time insist that the court shall not regard any fact in the conduct or relations of the parties which may show his suit to be inequitable and against conscience." Bausman v. Kelley, 36 N.W. 333, 336 (Minn. 1888).

### 4. Unjust Enrichment

Finally, DRD contends, based on the doctrine of unjust enrichment, that Cincinnati Insurance cannot deny that DRD has insurance coverage.

> To establish an unjust enrichment claim, the claimant must show that the defendant has knowingly received or obtained something of value for which the defendant in equity and good conscience should pay. Unjust enrichment claims do not lie simply because one party benefits from the efforts or obligations of others, but instead it must be shown that a party was unjustly enriched in the sense that the term unjustly could mean illegally or unlawfully.

---

[6] Plaintiffs argue (with no citation to support in the record) that Craig Wilson "did not know whether there was any significance to whether he and Mr. Garcri had a common law partnership, a corporation, an LLC or some other form of agreement between them." (Pls.' Mem. in Response to Def.'s Mot. for Summ. J. at 11.) Wilson, however, is also the sole shareholder of Environmental Troubleshooters, Inc., a company that provides environmental health and safety consulting services and has fourteen employees. (Knutson Aff. Ex. A at 5-6.) Asked how long his company had been in business, Wilson responded, "We were incorporated in December 1995. I'm sorry. October 1995." (Id. at 8.) There is no evidence to support a finding that, in November 2000, Craig Wilson was a neophyte who did not appreciate the significance of incorporating a business.

ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc., 544 N.W.2d 302, 306 (Minn. 1996). Plaintiffs argue that Cincinnati Insurance has been accepting premium payments from Craig Johnson for approximately two years and therefore would not be prejudiced by this Court holding as a matter of law that a contract of insurance exists between DRD and Cincinnati Insurance. This argument ignores two salient points. First, Cincinnati Insurance has never insured the Deer River property for its full value – i.e., the amount DRD paid when it purchased the parcel. Second, Cincinnati Insurance has acknowledged that Craig Wilson has *some* insurable interest in the Deer River property as a 50% shareholder in the corporation that owns the real estate. Thus, Cincinnati Insurance has covered an insurable interest in exchange for the additional $340 per year it receives from the Wilsons on their homeowners policy. Unjust enrichment does not apply.

**B. Assignment of the policy to DRD**

The Plaintiffs appear to argue that the coverage for the Deer River property that was added to the Wilsons' homeowners policy has been assigned to DRD, thereby taking that policy out of the general rule that policies of insurance do not attach to or run with the property insured. (See Pls.' Mem. in Resp. to Def.'s Mot. for Summ. J. at 4-5.)

The Wilsons' homeowners policy provides that "[a]ssignment of this policy shall not be valid unless we give our written consent." (Gronvall Aff. Ex. A at 18 of 18.) The Minnesota Supreme Court has considered virtually identical language and held that an insurance policy stating that an "[a]ssignment of interest under this policy shall not bind

the company until its consent is endorsed hereon" cannot be assigned without the consent of the insurance company, unless the insurer waived the written consent requirement. Sauber v. Northland Ins. Co., 87 N.W.2d 591, 599 (Minn. 1958). There is no evidence before the Court that Craig and Lisa Wilson -- the named insureds on the policy in question -- assigned to DRD either their policy, or some portion thereof.[7] There is no evidence that Cincinnati Insurance consented in writing to any assignment of the Wilsons' homeowners policy to DRD. Nor is there any evidence that Cincinnati Insurance waived the written consent requirement stated in the policy. The Court will not, retroactively, create an insurance relationship between DRD and Cincinnati Insurance under the fiction of an "assignment" that has never taken place.

Unlike the principal case on which Plaintiffs rely, National American Insurance Co. v. Jamison Agency, Inc., 501 F.2d 1125 (8th Cir. 1974), there is no danger of a forfeiture of insurance coverage if an assignment is not permitted. Cincinnati Insurance has acknowledged that Craig Wilson has an insurable interest in the Deer River property. Therefore, Plaintiffs are not entitled to a determination, as a matter of law, that the Wilsons effectively assigned their homeowners policy to DRD.

---

[7] Nor is there any evidence before this Court that Craig Wilson has assigned to DRD his right to compel Cincinnati Insurance to pay insurance proceeds in accordance with Wilson's insurable interest, as recognized in the policy and defined in the contract. See Kintzel v. Wheatland Mut. Ins. Ass'n, 203 N.W.2d 799, 805 (Minn. 1973). Such an assignment would be of a chose-in-action, not the policy itself. Id. at 804-05.

### C. Reformation of the policy to conform to reasonable expectations

The Plaintiffs' final argument is that the Court must reform the Wilsons' homeowners policy to create coverage for DRD in order to conform to the insureds' reasonable expectations. This argument is again derived from the view that the insurance agent, Bell, should have asked about the nature of Craig Wilson's business relationship with Gareri and should have inquired about the ownership of the rental property. It ignores the fact that Craig Wilson provided the insurance company with incorrect information concerning the ownership of the property, despite having incorporated DRD a few months earlier for the purpose of purchasing and owning investment property in the Deer River area. Wilson never mentioned the existence of DRD and did not seek to insure either DRD's interests in the property or Gareri's interest.

"[B]ecause of the unique circumstances surrounding a layperson's purchase of insurance, 'the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations.'" Hubred v. Control Data Corp., 442 N.W.2d 308, 311 (Minn. 1989) (quoting Atwater Creamery Co. v. Western Nat'l Mut. Ins. Co., 366 N.W.2d 271, 276 (Minn. 1985)). Whether an insured's expectation of coverage is reasonable is a question of law. Sicoli v. State Farm Mut. Auto. Ins. Co., 464 N.W.2d 300, 303 (Minn. Ct. App. 1990).

Under the undisputed facts of this case, Craig Wilson's claimed expectation –

that he was purchasing insurance coverage for DRD's interest in the Deer River property (the corporation's principal asset which was valued one month earlier in the marketplace at $190,000) by amending his homeowners' policy to include $85,000 of coverage – is not objectively reasonable. Craig Wilson knew how to obtain insurance for a corporation, having does so for his own environmental consulting business through the same insurance agent. Wilson has never submitted to DRD for reimbursement the cost of the additional premiums he has paid for coverage on the Deer River property. The Plaintiffs have not demonstrated that any language in the Wilsons' homeowners' policy is ambiguous, such that Craig Wilson could reasonably have understood Cincinnati Insurance to be insuring DRD's interest in the Deer River property. The doctrine of reasonable expectations does not apply.

**D. Cincinnati Insurance's Motion to Dismiss DRD**

Cincinnati Insurance moves to dismiss DRD from the lawsuit based on fundamental principles of Minnesota insurance law. A policy of insurance is contractual in nature and is personal to the named insureds. Closuit v. Mitby, 56 N.W.2d 428, 431 (Minn. 1953). As a general rule, insurance policies do not attach to or run with the property insured, regardless of whether the property is real or personal. Id. It is undisputed here that the named insureds on the homeowners policy are Craig and Lisa Wilson. DRD has never been named on the homeowners policy as an insured and has never paid premiums to Cincinnati Insurance. Indeed, Cincinnati Insurance did not know

of DRD's existence until after Wilson reported the loss in question to his insurance agent. Cincinnati Insurance is entitled to summary judgment as to DRD.

## III. The Claims of Lisa Wilson

Cincinnati Insurance moves to dismiss Lisa Wilson from this lawsuit on the grounds that she has no insurable interest in the Deer River property. Whether a person has an insurable interest in property is a question of fact. Hane v. Hallock Farmers Mut. Ins. Co., 258 N.W.2d 779, 781 (Minn. 1977). "[A]n insurable interest exists where the insured can suffer a loss if the subject property is damaged." Northwestern Nat'l Bank v. Maher, 258 N.W.2d 623, 624 (Minn. 1977). "[I]t is not necessary that the insured should have an absolute right of property, . . . [s]he has an insurable interest if, by the destruction of the property, [s]he will suffer a loss, whether [s]he has or has not any title to, lien upon, or possession of the property itself." Banner Laundry Co. v. Great Eastern Cas. Co., 180 N.W. 997, 999 (Minn. 1921) (holding that laundry which was obligated under lease to replace glass broken during lease term had insurable interest in building's window glass).

"Minnesota courts apply the pecuniary loss test" to determine whether an insurable interest exists. Crowell v. Delafield Farmers Mut. Fire Ins. Co., 463 N.W.2d 737, 739 (Minn. 1990). DRD owns the property in question and clearly would sustain a pecuniary loss if the property is damaged; unfortunately for DRD, as discussed above, it has no contractual relationship with Cincinnati Insurance. Craig Wilson is a 50% shareholder of DRD; Cincinnati Insurance does not dispute that he sustains a pecuniary loss if the Deer

River property – the principal asset of the corporation – has been damaged. The value of his stock decreases.

Lisa Wilson has no direct connection to DRD. She is not a shareholder, director, or officer of the corporation. Ms. Wilson contends that, by virtue of her marriage to Craig, she has an inchoate and contingent interest in her spouse's *realty*, citing numerous Minnesota cases. (See Pls.' Mem. in Resp. to Def.'s Mot. for Summ. J. at 13-14.) The difficulty with that contention is that Craig Wilson does not own the Deer River property. DRD does. At the hearing on the summary judgment motions, Ms. Wilson acknowledged that DRD could convey the Deer River property to another without her approval, a circumstance that would not be true if her husband owned the property.

Ms. Wilson therefore also argues more broadly that, by virtue of her marriage to Craig and his ownership of shares in the DRD, she has an insurable interest in the Deer River property. The Wilsons have not cited a case directly on point, but it appears that, under Minnesota law, one spouse may have an insurable interest in personal property owned by the other spouse. For example, each spouse has "an insurable interest in all the household furniture used in the home, regardless of how the title was acquired or who may be the separate owner thereof for other purposes." Basa v. Pierz Farmers Mut. Fire Ins. Co., 227 N.W. 39, 40 (Minn. 1929). The Court concludes that a genuine issue of fact exists as to whether Lisa Wilson has an insurable interest in the Deer River property.

Assuming that Lisa Wilson has such an insurable interest, she would be entitled to

recover under the policy for damage to the house only in such a sum as will indemnify her for her loss, a sum to be estimated according to the value of her contingent and inchoate right at the time of the loss. See Harrington v. Agricultural Ins. Co., 229 N.W. 792, 794 (Minn. 1930). There is insufficient evidence before the Court to establish whether Lisa Wilson's contingent and inchoate right in her husband's shares in DRD has a value, let alone what that value is. That issue also presents genuine issues of material fact.

**Conclusion**

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED** that

1. Defendant Cincinnati Insurance's Motion for Summary Judgment (Doc. No. 16) is **GRANTED IN PART** as to Plaintiff Deer River Development Inc. and **DENIED** as to Plaintiff Lisa Wilson;

2. Plaintiffs' Motion for Summary Judgment (Doc. No. 19) is **DENIED**; and

3. Plaintiff Deer River Development, Inc. is hereby **DISMISSED WITH PREJUDICE.**

Date: January 9, 2003

RICHARD H. KYLE
United States District Judge

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500

## NOTICE

The latest amendments to the federal rules of procedure, (Civil, Criminal, Appellate and Bankruptcy), went into effect on December 1, 2002. The new amendments and related committee notes can be found at www.uscourts.gov/rules/amendments0202.htm.

One change is particularly noteworthy. That is Rule 7.1 of the Federal Rules of Civil Procedure. This rule requires that corporations file a "disclosure statement" whenever they initially appear as a party in a federal court action. The Rule 7.1 Disclosure Statement must identify "any parent corporation and any publicly held corporation that owns 10% or more" of the stock of the corporate party filing the statement. The purpose of the disclosure statement is to help judges and magistrate judges identify potential conflicts of interest. (Similar disclosure statement requirements are prescribed by Rule 26.1 of the Federal Rules of Appellate Procedure and Rule 12.4 of the Federal Rules of Criminal Procedure.)

Beginning December 1, 2002, a Rule 7.1 Disclosure Statement must be filed by every corporation when it first appears in a federal action, even if the corporation merely reports that there is no parent corporation or publicly held corporation that owns 10% or more of its stock. These Disclosure Statements must also be filed retroactively, for every corporation which is a party to an action pending in this District as of December 1, 2002. The retroactive Rule 7.1 statements must be filed immediately.

It also should be noted that there have been extensive stylistic changes, (as well as a few substantive changes), to the Federal Rules of Criminal Procedure. Attorneys who appear in federal criminal cases should review the amended version of the Rules.